1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT ERICKSON, | ) | CASE NO. SACV 10-698 AG (ANx) |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING MOTION FOR |
| | ) | JUDGMENT ON THE PLEADINGS |
| v. | ) | AND GRANTING MOTION FOR |
| | ) | PARTIAL SUMMARY JUDGMENT |
| | ) | |
| BOSTON SCIENTIFIC | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Robert Erickson ("Plaintiff") sued Defendants Boston Scientific Corporation and Guidant Corporation (together, "Defendants") for manufacturing and selling allegedly defective cardiac pacemakers that were surgically implanted in Plaintiff. Defendants now file a Motion for Judgment on the Pleadings and a Motion for Partial Summary Judgment. After reviewing the arguments and papers submitted, the Court GRANTS both motions.

**BACKGROUND**

     Plaintiff has heart problems and has lived with a cardiac pacemaker since 1997. Plaintiff's first pacemaker – the VIGOR DR, Model 1232 pacemaker ("Vigor Pacemaker") – was surgically implanted in 1997.  Plaintiff alleges that although his doctors told him the Vigor Pacemaker would last ten years, it had to be removed after only four years and nine months. (Complaint ¶ 8.)

     Plaintiff received his second pacemaker – the INSIGNIA Plus DR, Model 1298 pacemaker ("Insignia 1298 Pacemaker") – in 2002.  (*Id.* ¶ 9.)  Plaintiff alleges that this pacemaker had to be removed in 2005 even though doctors told him it would last ten years.  (*Id.*)

     Plaintiff then received a third pacemaker – the INSIGNIA Ultra DR, Model 1290 pacemaker ("Insignia 1290 Pacemaker").  As with the first two pacemakers, Plaintiff alleges that although his doctors told him the Insignia 1290 Pacemaker would last ten years, it failed in less than five.  (*Id.* ¶ 10.)

     In 2005, after the Insignia 1290 Pacemaker was removed, Plaintiff received a fourth pacemaker – the ALTRUA 60 DDR, Model S606 pacemaker ("Altrua Pacemaker").  Though the Altrua Pacemaker is still in his body, Plaintiff alleges that its operation is "suspect."  (*Id.*)

     Plaintiff alleges that Defendants "misrepresented the safety and quality of their pacemakers" and "actively concealed" defects in the pacemakers from the FDA and the general public.  (*Id.* ¶ 12-13.)  Plaintiff specifically alleges Defendants knew that the life expectancy of the pacemakers was significantly shorter than advertised.  (*Id.* ¶ 15.)  Based on these allegations and others, Plaintiff asserts the following five claims against Defendants: (1) "strict liability – failure to warn"; (2) "strict liability – design and/or manufacturing defect"; (3) negligence; (4) fraud; and (5) "gross negligence – malice."  (*Id. passim.*)

1    **ANALYSIS**

2

3        The Court first considers Defendants' Motion for Judgment on the Pleadings before

4 turning to Defendants' Motion for Partial Summary Judgment.

5

6    **1.**       **MOTION FOR JUDGMENT ON THE PLEADINGS**

7

8        **1.1**      **Preliminary Matters**

9

10        To support its Motion for Judgment on the Pleadings, Defendants request that the Court

11 take judicial notice of the following six documents: (1) a June 1995 Premarket Approval

12 ("PMA") for the Vigor Pacemaker; (2) an October 1996 supplemental PMA approval for the

13 Vigor Pacemaker; (3) a June 1999 supplemental Product Development Protocol ("PDP")

14 approval for the Insignia 1298, Insignia 1290, and Altrua Pacemakers; (4) a March 2002

15 supplemental PDP approval for the Insignia 1298 Pacemaker; (5) a November 2003

16 supplemental PDP approval for the Insignia 1290 Pacemaker; and (6) a January 2009

17 supplemental PDP approval for the Altrua Pacemaker. Documents 1 and 3 are published in the

18 Federal Register. 61 Fed. Reg. 60,713 (Nov. 29, 1996); 64 Fed. Reg. 68, 695-96 (Dec. 8, 1999).

19 The remaining documents are published by the Food and Drug Administration ("FDA") and are

20 located under the heading "PMA Approvals" on the FDA's online database. Plaintiff does not

21 oppose Defendants' requests for judicial notice.

22        Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject

23 to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of

24 the trial court or (2) capable of accurate and ready determination by resort to sources whose

25 accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice

26 of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed*

27 facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)

28 (emphasis in original). Facts subject to judicial notice may be considered on a Rule 12(c)

1  motion.  *McCain v. Stockton Police Dept.*, 2011 WL 4710696, *2 (C.D. Cal. Oct. 4, 2011)

2  (citing Mullis *v. U.S. Bankr. Ct.*, 828 F.2d.1385, 1388 (9th Cir. 1987)).

3       The Court finds that the documents here meet the requirements of Rule 201.

4  Accordingly, the Court GRANTS Defendants' request.

5

6       **1.2     Legal Standard**

7

8       "After the pleadings are closed but within such time as not to delay the trial, any party

9  may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Rules 12(b)(6) and 12(c) are

10  substantively identical.  *See* William W. Schwartzer, A. Wallace Tashima & James M.

11  Wagstaffe, Federal Civil Procedure Before Trial § 9:319.  For a 12(c) motion, the Court accepts

12  the allegations of the non-moving party as true.  *Hal Roach Studios, Inc. v. Richard Feiner &*

13  *Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480,

14  1482 (9th Cir 1984).  If the complaint fails to articulate a legally sufficient claim, the complaint

15  should be dismissed or judgment granted on the pleadings.  *Id.*

16       A complaint need only include "a short and plain statement of the claim showing that the

17  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "'[D]etailed factual allegations' are not

18  required."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Bell Atl. Corp. v. Twombly*,

19  550 U.S. 554, 555 (2007) (stating that "a complaint attacked by a Rule 12(b)(6) motion to

20  dismiss does not need detailed factual allegations")).  The Court must accept as true all factual

21  allegations in the complaint and must draw all reasonable inferences from those allegations,

22  construing the complaint in the light most favorable to the plaintiff.  *Pollard v. Geo Group, Inc.*,

23  607 F.3d 583, 585 n.3 (9th Cir. 2010).

24       But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim

25  to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at

26  570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw

27  the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.

28

4

1   Ct at 1940 (citing *Twombly*, 550 U.S. at 556).  A court should not accept "threadbare recitals of a

2   cause of action's elements, supported by mere conclusory statements.  *Id.*

3      The Ninth Circuit recently addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652

4   F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court stated, "First, to be entitled to the presumption

5   of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause

6   of action, but must contain sufficient allegations of underlying facts to give fair notice and to

7   enable the opposing party to defend itself effectively.  Second, the factual allegations that are

8   taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require

9   the opposing party to be subjected to the expense of discovery and continued litigation."  *Id.*

10      "A district court may deny a plaintiff leave to amend if it determines that allegation of

11   other facts consistent with the challenged pleading could not possibly cure the deficiency . . . or

12   if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure

13   deficiencies."  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); *see also*

14   *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

15      To comply with Fed. R. Civ. P. 9(b), a plaintiff must plead "with particularity" the time

16   and place of the fraud, the statements made and by whom made, an explanation of why or

17   how such statements were false or misleading when made, and the role of each defendant

18   in the alleged fraud.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 & n.7 (9th Cir. 1994)

19   (en banc); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (holding

20   that Rule 9(b) requires a plaintiff to "state the time, place, and specific content of the false

21   representations as well as the identities of the parties to the misrepresentation").  Where the

22   allegations supporting a claim fail to satisfy the heightened pleading requirements of Rule 9(b),

23   the claim is subject to dismissal.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

24   2003).

25

26

27

28

**1.3     Preemption of State Law Claims**

Defendants argue that Plaintiff's claims are preempted by the Medical Device Amendments of 1976 ("MDA") to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, 360 *et seq.*  While acknowledging that state law claims involving FDA-approved medical devices are "generally pre-empted," Plaintiff argues that his particular claims escape preemption for two reasons:  because Defendants "have failed to prove or even allege" that its pacemakers were subject to rigorous Food and Drug Administration ("FDA") approval, and because the pacemakers did not comply with FDCA requirements.  (Opp'n at 2-3.)  Before considering these arguments, the Court first discusses the scope of MDA preemption.

**1.3.1   Scope of MDA Preemption**

The FDCA has long required the FDA to approve drugs and medical devices before they enter the market.  *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 315 (2008).  The 1976 MDA strengthened federal oversight of medical devices, and expressly preempted regulation of these devices by the states.  *Id.*  The MDA's preemption provision states that:

> [N]o State or political subdivision of a State may establish or
> continue in effect with respect to a device intended for human use
> any requirement –
>
> (1) which is different from, or in addition to, any requirement
> applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any
> other matter included in a requirement applicable to the device under
> this chapter.

1   *Id.* at 316 n.1 (citing 21 U.S.C. § 360k(a)).  The MDA regulatory regime established three

2   classes of medical devices.  *Id.* at 316.  Class I devices, such as bandages and latex gloves, are

3   subject to the lowest level of regulation, Class II devices receive closer FDA scrutiny, and Class

4   III devices, such as pacemakers, receive the most intensive federal oversight.

5       In *Reigel v. Medtronic*, the Supreme Court held that the MDA expressly preempts state

6   law claims if "specific federal requirements apply to the particular medical device that is the

7   subject of the state law claim," and "the state-law tort claim imposes a standard of care or

8   behavior that is 'different from, or in addition to' the specific federal requirements."  *Id.* at 322

9   (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 498-99, 504-06 (1996) (holding that MDA

10  preemption applies to common law claims such as "strict products liability, breach of implied

11  warranty, and negligence")).

12      District courts in the this Circuit have applied *Riegel* to preempt a broad range of state

13  law claims brought against FDA-approved Class III medical devices.  *See, e.g.*, *Cohen v.*

14  *Guidant Corp*, 2011 WL 637472, at *1 (C.D. Cal. Feb. 15, 2011) (finding that plaintiff's "state

15  law claims are preempted by federal law because the pacemaker at issue in this action, [the same

16  Insignia 1298 Pacemaker at issue here], is a Class III Medical Device that was evaluated under

17  the equivalent of the FDA's premarket approval process"); *Norton v. Indep. Tech., LLC*, 2011

18  U.S. Dist. LEXIS 90526 (E.D. Cal. Aug. 15, 2011) (granting defendant's Rule 12(c) motion

19  because plaintiff's products liability and negligence claims concerning a Class III motorized

20  wheelchair were preempted by the MDA); *Nimtz v. Cepin*, 2011 WL 831182 (S.D. Cal. Mar. 3,

21  2011) (dismissing state law claims against the same Insignia 1290 Pacemaker at issue in this

22  case).

23      Here, there is no dispute that specific federal requirements apply to Defendants'

24  pacemakers.  Nor is there any doubt that Plaintiff's state law claims impose standards of care

25  "different from, or in addition to" federal requirements.  *See Medtronic*, 518 U.S. at 504-06.

26  Defendants' pacemakers are Class III medical devices approved by the FDA through the PMA

27  and PDP processes.  (See Request for Judicial Notice, Exs. A-F.)  Instead of disputing these

28  points, Plaintiff argues that its pleadings are sufficient because the pacemakers *may* have been

1   approved by the FDA through the less rigorous "Section 501(k)" process and because they

2   violate FDA requirements.  The following subsections explain why these arguments fail.

3

### 1.3.2   FDA Premarket Approval and Product Development Protocol

5

6   Some of Defendants' pacemakers were not subject to the FDA's PMA process, but were

7   instead approved through the FDA's supplemental Product Development Protocol ("PDP").  In

8   *Reigel*, the Supreme Court stated that an application for *supplemental* premarket approval is

9   "evaluated under largely the same criteria as an initial application."  *Riegel v. Medtronic, Inc.*,

10  552 U.S. 312, 319 (citing § 360e(d)(6) and 21 C.F.R. § 814.39(c)).  Courts have interpreted

11  *Reigel* to mean that preemption applies equally to both the PMA and PDP processes.  *See, e.g.*,

12  *Nimtz v. Cepin*, 2011 WL 831182, *3 (S.D. Cal. Mar. 3, 2011) (citing *Betterton v. Evans*, 351 F.

13  Supp 529, 535 (the MDA and FDA regulations "establish that the PMA and PDP processes are

14  to be treated synonymously"); *see also Clement v. Kaiser Foundation Health Plan, Inc.*, 2004

15  WL 3049753, *4 n.8 (C.D. Cal. Dec. 17, 2004) ("The Court is inclined to agree that the PDP

16  approval process is as rigorous, at least for the purposes of preemption, as the PMA process.")

17  In his four-page Opposition, Plaintiff never actually argues that claims against Class III

18  devices subject to the PDP process are not preempted.  Instead, Plaintiff argues that preemption

19  *would* not apply to Defendants' pacemakers *if* they "entered the market through the § 501(k)

20  process."  Under the so-called "§ 501(k)" process, the FDA may approve new medical devices

21  that are "substantially equivalent" to devices already in the market without putting them through

22  the rigors of PMA or PDP approval.  *Riegel*, 552 U.S. at 317.  Devices approved by the FDA

23  under § 501(k) are not entitled to the same preemption protection as devices subject to the PMA

24  or PDP processes.

25  But Plaintiff never alleges that Defendants' pacemakers entered the market through the §

26  501(k) process.  And Defendants' judicially noticed documents show that the Pacemakers were,

27  in fact, subject to the PMA and PDP processes.  The Court therefore rejects Plaintiff's implicit

28

1  contention that preemption does not apply because the pacemakers were not subject to

2  sufficiently rigorous FDA scrutiny.

3

4  ### 1.3.3  "Parallel Claim" Exception to FDA Preemption

5

6  The *Riegel* decision left open a narrow exception to express preemption under the MDA.

7  This "parallel claim" exception allows states to "provid[e] a damages remedy for claims

8  premised on a violation of FDA regulations." *Riegel*, 522 U.S. at 330 (quoting *Lohr*, 518 U.S. at

9  495 (holding that "the state duties in such a case 'parallel,' rather than add to, federal

10  requirements")).  To properly plead parallel claims that survive preemption, a plaintiff must

11  allege facts "(1) showing an alleged violation of FDA regulations or requirements related to [the

12  device], and (2) establishing a causal nexus between the alleged injury and the violation."

13  *Cohen v. Guidant Corp.*, 2011 WL 637472, *1 (C.D. Cal. 2011) (citing *Parker v. Stryker Corp.*,

14  584 F. Supp. 2d 1298, 1301-02 (D. Colo. 2008); *see also Horowitz v. Stryker Corp.*, 613 F.

15  Supp. 2d 271, 282 (E.D.N.Y. 2009).

16  As more than one federal court has noted in the MDA preemption context, a plaintiff

17  "cannot simply incant the magic words '[defendant] violated FDA regulations' in order to avoid

18  preemption." *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296 (11th Cir. 2011) (citing *In re

19  Medtronic, Inc. Sprint Fidelies Leads Prod. Liability Litig.*, 592 F. Supp. 2d 1147, 1158 (D.

20  Minn. 2009)).  Rather, a plaintiff must allege that the defendant "violated a particular federal

21  specification referring to the device at issue," *Ilarraza v. Medtronic, Inc.*, 677 F. Supp. 2d 582,

22  589 (E.D.N.Y. 2009), or identify specific PMA requirements that have been violated.  *Parker v.

23  Stryker Corp.*, 584 F. Supp. 2d 1298, 1301 (D. Colo. 2008) (granting defendant's Rule 12(b)(6)

24  motion because "nowhere does plaintiff's complaint provide any factual detail to substantiate

25  th[e] crucial allegation" that the devices violated FDA requirements).

26  Here, Plaintiff alleges only that the pacemakers "were designed and/or manufactured in a

27  manner violative of the [FDCA]" and that "[t]he facilities or controls used by Defendants . . .

28  were not in conformity with applicable FDCA regulations." (Complaint ¶ 28.)  Plaintiff fails to

allege how Defendants deviated from any specific FDA requirements, or how these violations affect the pacemakers at issue.  Plaintiff's conclusory allegations are insufficient to establish a parallel claim defeating MDA preemption.

In its Opposition, Plaintiff argues that a product "recall" for the Insignia 1290 and 1298 Pacemakers establishs that these devices violated FDA requirements.  Plaintiff specifically argues that "logic and commons [sic] sense mandates [sic] that a product recall indicates that defendants did not comply with their PMA approval."  (Opp'n at 4.)  Defendants contend that these "voluntary company-issued advisor[ies]" do not defeat preemption, and the Court agrees.

Many courts have recognized that product recalls do not create a presumption that FDA requirements have been violated.  *See, e.g.*, *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1056 (2008) ("The fact that the FDA implemented a Class I recall of the [medical device] does not alter our conclusion [that plaintiff's claims are premempted]." *See also In re Medtronic*, 592 F. Supp. 2d at 1155-56 (dismissing all claims as preempted despite the devices at issue being subject to FDA recall.)  Plaintiff does not allege that FDA approval or supplemental approval for the pacemakers has been revoked.  Nor does Plaintiff allege that the recall was prompted by defects relating to the pacemakers' longevity.  The Insignia 1290 and 1298 Pacemakers remain approved and entitled to express preemption under the MDA and *Riegel*.

### 1.4    Fraud

Plaintiff's fraud claim is also deficient because Plaintiff's allegations of fraud are not pled with sufficient particularity.  *See* Fed. R. Civ. P. 9(b)  Plaintiff alleges that Defendants' misrepresentations concerning the safety, effectiveness, and longevity of the pacemakers induced him to have them surgically implanted in his body.  But the Complaint does not allege the specific content of these misrepresentations.  Nor does the Complaint allege when and where the misrepresentations were made, or who made them.  *See Edwards*, 456 F.3d at 1066 (holding that Rule 9(b) requires a plaintiff to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

1    Plaintiff also fails to sufficiently allege that Defendants fraudulently concealed

2    information concerning defects in the pacemakers.  To plead the existence of an omission

3    sufficient to support a fraudulent concealment claim, a plaintiff "must describe the content of the

4    omission and where the omitted information should or could have been revealed." *Marolda v.*

5    *Symantec Corp.*, 672 F. Supp. 2d 992, 1005 (N.D. Cal. 2009) (holding that a plaintiff must also

6    provide "representative samples of advertisements, offers, or other represenations that plaintiff

7    relied on to make her purchase and that failed to include the allegedly omitted information.")

8    Because Plaintiff's allegations of fraudulent concealment lack this degree of particularity, they

9    fail to satisfy the requirements of Rule 9(b).

10

11        **1.5    Conclusion**

12

13        Plaintiff's state law claims are preempted under the MDA because the pacemakers were

14   subject to the FDA's PMA and PDP approval processes, and because Plaintiff has not

15   sufficiently alleged that the "parallel claims" exception applies.  Accordingly, Defendants'

16   Motion for Judgment on the Pleadings is GRANTED.  Leave to amend is DENIED because

17   amendment would be futile given the preemption arguments raised by Defendant, and because of

18   the difficulties that would arise from amendment so soon before the scheduled trial date.  *See*

19   *Telesaurus*, 623 F.3d at 1003.

20

21   **2.    MOTION FOR PARTIAL SUMMARY JUDGMENT**

22

23        While the Court's ruling on the pleadings likely renders Defendants' summary judgment

24   motion moot, the Court nevertheless finds it appropriate to consider the merits of Defendants'

25   motion given the late stage of the proceedings.

26        Defendants move for summary judgment on two of the four pacemakers – the Vigor 1232

27   Insignia 1298 Pacemaker – arguing that statute of limitations on Plaintiff's claims involving

28   these pacemakers expired before this action was filed in June 2010.  In his five-page Opposition,

1    Plaintiff argues that the two-year statute of limitations does not bar his claims on these

2    pacemakers because the statute did not start to run until November 2009 when Defendants'

3    technician allegedly told Plaintiff that the pacemakers were covered by a five-year warranty.

4    Defendants contend that the statute of limitations expired in 2007 based on evidence that the

5    Plaintiff suspected that the pacemakers were defective in 2005.   The Court agrees with

6    Defendants.

7

8    **2.1     Legal Standard**

9

10   Summary judgment is appropriate only where the record, read in the light most favorable

11   to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . .

12   the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex*

13   *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or

14   defense of a claim, as determined by reference to substantive law.  *Anderson v. Liberty Lobby,*

15   *Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a

16   reasonable jury could return a verdict for the nonmoving party."  *Id.*  In deciding a motion for

17   summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable

18   inferences are to be drawn in his favor."  *Id.* at 255.

19   The burden initially is on the moving party to demonstrate an absence of a genuine issue

20   of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden,

21   then the non-moving party must produce enough evidence to rebut the moving party's claim and

22   create a genuine issue of material fact.  *Id.* at 322-23.  If the non-moving party meets this burden,

23   then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099,

24   1103 (9th Cir. 2000).

25

26

27

28

### 2.2    Statute of Limitations

California Civil Procedure Code § 335.1 sets a two-year statute of limitations on claims like those Plaintiff asserts.  Section 335.1 bars untimely personal injury claims based upon defective products regardless of the particular legal theory invoked.  *See, e.g.*, *Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) (applying the statute of limitations to claims for products liability, negligence, breach of warranty, and fraud).  In other words, all five of Plaintiff's claims are subject to § 335.1's two-year statute of limitations.

Under California's Discovery Rule, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing . . . ."  *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1104, 1110 (Cal. 1988) (explaining that "the limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry").  Thus, the Court must determine whether there is a genuine issue of material fact regarding when Plaintiff suspected, or should have suspected, that Defendants' pacemakers were allegedly defective.

As noted in the Background Section, Plaintiff received his first pacemaker, the Vigor 1232 Pacemaker, in 1997.  Plaintiff alleges that his doctor told him that the Vigor 1232 Pacemaker was supposed to last ten years, but that it "failed to operate properly" and "required replacement at physicians' direction" after only four years and nine months.  (Complaint ¶¶ 7-8.)  Likewise, Plaintiff alleges that his physicians told him in 2002 that the Insignia 1298 Pacemaker should last ten years, but that it "failed to operate properly" and "required replacement at physician's direction" in 2005, less than three years after it was implanted.  (*Id.* ¶ 9.)

Defendants argue that Plaintiff's allegations establish that Plaintiff knew, or should have known, that the Vigor and Insignia 1298 Pacemakers were allegedly defective in 2002 and 2005 – when they were surgically removed from his chest.  Yet despite the allegedly premature failure of these two pacemakers, Plaintiff claims that he never suspected anything was wrong with

1  them.  Plaintiff further claims that his doctors never told him why these pacemakers didn't last

2  ten years, and that he never asked his doctors why they failed so soon.  (Opp'n at 4.)

3       A reasonable person in Plaintiff's position may have asked his doctor why removal and

4  replacement was necessary after such an unexpectedly short time.  A reasonable person may also

5  have investigated publicly available information concerning the pacemakers.  But the Court need

6  not base its finding on what a reasonable person would have done under the circumstances

7  because *Plaintiff himself* admitted that he thought the Insignia 1298 Pacemaker might be

8  defective as early as 2005.  At his June 15, 2011 deposition, Plaintiff stated that he "suspect[ed]"

9  that there was something wrong the Insignia 1298 Pacemaker on February 17, 2005 – the day the

10  Insignia 1298 Pacemaker was removed.

11      While acknowledging that he thought "maybe something was wrong" in 2005, Plaintiff

12  argues that these concerns have no bearing on the statute of limitations because "[they] were

13  never communicated to the doctor."  (Opp'n at 3:21-22.)  But Plaintiff cannot prevent the statute

14  of limitations from starting simply by refusing to investigate his suspicions.  As the California

15  Supreme Court stated in *Jolly*, "[o]nce the plaintiff has a suspicion of wrongdoing, and therefore

16  an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a

17  suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to

18  find her."  *Jolly*, 44 Cal.3d at 1110-12.  Nor is Plaintiff excused from the statute of limitations

19  because he may not have known the specific facts supporting his claims.  *Id.* at 1110-12

20  (requiring a plaintiff to reasonably investigate even if he is "not [] aware of specific 'facts'

21  necessary to establish [a claim].").  Coupled with the allegations in his Complaint, Plaintiff's

22  2005 suspicions concerning the proper functioning of Insignia 1298 Pacemaker eliminate any

23  genuine issue of triable fact on the statute of limitations question.

24      Finally, Plaintiff argues that Defendants are estopped from relying on the statute of

25  limitations defense because "they actively concealed the actual expected length of use of the

26  pacemakers."  But Plaintiff provides no evidence supporting this allegation.  In fact, Plaintiff's

27  evidence leads to the opposite conclusion.  Exhibit 2 to the declaration of Neal Swensen

28  supporting Plaintiff's Opposition to Defendants' Motion contains a screen shot of the

1  "Frequently Asked Questions" from Defendants' website.  Under the heading "Will my
2  pacemaker ever need to be replaced?" Defendants write:

3  > Eventually, yes.  You pacemaker runs on a battery.  Like all
4  > batteries, the battery in your device will be used up over time. . . .
5  > When the battery power reaches a certain point, your pacemaker
6  > needs to be replaced.  *How long your pacemaker's battery lasts*
7  > *depends upon the settings your doctors programs and how much*
8  > *therapy you receive*.  Pacemakers today typically last 6 to 8 years.

9  (Swenson Decl. Ex. 2 (emphasis added).)  Defendants, on the other hand, provide extensive
10  evidence showing that the lifespan of its pacemakers are unique to each individual patient, and
11  that this information was distributed publicly.

12  Defendants have shown that no genuine issue of material fact exists as to when Plaintiff
13  first suspected that the pacemakers were defective, and Plaintiff has not provided evidence
14  sufficient to rebut this showing.  The Court therefore GRANTS Defendants' Motion for Partial
15  Summary Judgment as to the Vigor and Insignia 1298 Pacemakers.

16

17  **DISPOSITION**

18

19  The Court GRANTS Defendants' Motion for Judgment on the Pleadings without leave to
20  amend.  The Court also GRANTS Defendants' Motion for Summary Judgment as to the VIGOR
21  DR, Model 1232 Pacemaker and INSIGNIA Plus DR, Model 1298 Pacemaker.  Defendants shall
22  promptly submit a proposed judgment consistent with this Order.

23

24  IT IS SO ORDERED.

25  DATED: December 12, 2011

26  _____

27  Andrew J. Guilford

28  United States District Judge

15